UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x

ANTHONY D. AMAKER,

            Plaintiff,

    -against-

V. SCHIRALDI, Comm.; A. BERMUDEZ,
Asst. Comm.; G. KUZIW; P. BRENNAN,
Acting Comm.; T. TRACY, Deputy Comm.;
K. ARMSTRONG, Asst. Comm.; P. BELL;
T. LIZZIO; R. DIFIORE; A. REED[1]; R.
LOSADA; J. SIMMONS; E. COLLADO; S.
CHRISTIE; D. GLEBOCKI; and
GOLDSMITH,

            Defendants.

-------------------------------------------------------x

NOT FOR PUBLICATION
**MEMORANDUM & ORDER**
15-CV-4879 (CBA) (VMS)

**AMON, United States District Judge:**

       Plaintiff Anthony D. Amaker, currently incarcerated in Gouverneur Correctional Facility,

brings constitutional claims pro se against 16 current and former employees of the New York City

Department of Probation (collectively, the "City Defendants") and New York State Department of

Corrections and Community Supervision (collectively, the "State Defendants"), pursuant to 28

U.S.C. §§ 1981 and 1983.  Plaintiff, who is African American, contends that Defendants

perpetuated false information about him in his parole file because of his race, in violation of the

Supremacy Clause and the Due Process and Equal Protection clauses of the Fourteenth

Amendment.  (See generally D.E. # 34 (Am. Compl."); D.E. # 65; D.E. # 82.)  Plaintiff filed an

Amended Complaint on August 30, 2016, seeking injunctive and declaratory relief, as well as

$100,000 in compensatory damages and $100,000 in punitive damages.  (See id. ¶¶ 33–36, 38.)

---

[1] The Clerk of Court is directed to amend the caption to reflect Defendant's corrected last name. See infra note 4.

Before the Court are three motions: (1) a joint motion to dismiss the Amended Complaint by all City Defendants except P. Bell,[2] (D.E. # 45); (2) a joint motion to dismiss by the State Defendants, (D.E. # 77); and (3) a joint motion by the State Defendants to quash Plaintiff's in forma pauperis status, (D.E. # 86). For the reasons stated below, the Court grants the two joint motions to dismiss and denies as moot the State Defendants' motion to quash Plaintiff's in forma pauperis status.

## BACKGROUND[3]

Plaintiff was convicted in 1989 of second-degree murder for shooting a victim during a robbery in Brooklyn. (See Am. Compl. ¶ 19; id., Ex. A at 1, 3.) He is currently serving his sentence for that conviction. Plaintiff files this action in connection with his unsuccessful efforts to gain release on parole. According to Plaintiff, Defendants have "maintain[ed] false" information "that has been used against" him in his parole file. (Am. Compl. ¶ 5.) The falsehoods make Plaintiff appear a riskier and more dangerous parole candidate than he is, therefore "caus[ing] prejudice" to his case every time he appeared before the parole board. (Id. ¶ 9.) Defendants have "impos[ed a] burden upon" his ability to maintain family relationships by perpetuating the inaccuracies and "delaying any and all parole consideration" based on correct information. (Id. ¶ 29.) And Defendants have "refus[ed]" to correct the information "despite clear proof" from Plaintiff. (Id.)

---

[2] For all but one Defendant, Plaintiff provides only the first initial. (See Am. Compl.)

[3] The Court draws its facts from the Amended Complaint, documents attached to it or incorporated by reference, and "matters subject to judicial notice." N.Y. Pet Welfare Ass'n, Inc. v. City of N.Y., 850 F.3d 79, 86 (2d Cir. 2017). Moreover, because the Court should liberally construe a pro se litigant's pleadings, it reads the Amended Complaint as adopting any legal issues or factual allegations made in Plaintiff's memoranda of law opposing dismissal and the exhibits attached to the memoranda. See, e.g., Le Grand v. Evan, 702 F.2d 415, 416 n.3 (2d Cir. 1983); Alexander v. Coughlin, No. 90-CV-3231 (RR), 1991 WL 150674, at *1 (E.D.N.Y. July 26, 1991); Langert v. Festa, 563 F. Supp. 692, 696 (E.D.N.Y. 1983), overruled in part on other grounds by Owens v. Treder, 873 F.2d 604 (2d Cir. 1989).

The Amended Complaint does not explicitly identify this "clear proof." But construed liberally, the pleadings specify the following records favorable to Plaintiff's case: two state court orders requiring Defendants to change information in their records, (id. ¶¶ 6, 10), Plaintiff's "official Rap Sheet," (see id. ¶¶ 10–12), and a "Parole Summary" prepared by the state corrections department.[4] (Id., Ex. C.)

According to the Amended Complaint, Defendants have disregarded Plaintiff's "clear proof" because they have been "trained" to view him and other black prisoners as "untrustworthy," (id. ¶¶ 5, 10). Including false information in his parole file "would never [have] occurred had the plaintiff had [sic] not been African American, because special care in the accuracy of the information would have been placed on the" reports of white prisoners. (Id. ¶ 8.)

Plaintiff contends that Defendants have included false information in two documents. The Court discusses them in turn.

I.    **Presentencing Report**

According to Plaintiff, the first document, a presentencing report prepared by city probation staff and presented to the state parole board, "erroneously maintain[ed] the incorrect information" in its section for Plaintiff's criminal history. (Id. ¶ 5.) With respect to this document, Plaintiff makes claims against the 10 City Defendants: K. Armstrong, Bell, A. Bermudez, P. Brennan, R. DiFiore, G. Kuziw, T. Lizzio, V. Schiraldi, J. Simmons, and R. Losada, who all worked for the city probation department. (See generally Am. Compl.; D.E. # 65; D.E. # 82.)

Plaintiff has attached a version of the presentencing report prepared by Bell, Losada, and Simmons on October 26, 1989. (See id. ¶ 6, Exs. A–B.) Under a criminal-history subsection titled

---

[4] It is unclear from the pleadings whether the latter two documents are distinct, and thus the Court construes them as separate documents.

"Adult," the report listed five arrests from 1979 to 1988. (Id., Ex. A at 2.) According to the first entry, Plaintiff was arrested on November 1, 1979, indicted for second-degree murder, and convicted of two counts of first-degree manslaughter. (Id.) In a later section titled "Analysis of Offense and Legal History," the report stated: "The instant offense constitutes the defendant's sixth adult arrest. The instant offense is the defendant's second arrest and conviction as to homicide. . . . The defendant has no known juvenile history." (Id. at 5.)

According to Plaintiff, the report incorrectly states that his arrest for second-degree murder and conviction of first-degree manslaughter occurred while he "was an adult." (Id. ¶ 8.) Although he was transferred to an adult prison when he turned 21 in 1986, he had been arrested as a minor. (See id. ¶ 20.) Before he turned 21, he had been housed in a facility run by the Division for Youth, now called the New York State Office of Children and Family Services ("NYSOCFS"). (See id. ¶ 9; D.E. # 65-2, Ex. A; D.E. # 82, Ex. F.) The information in the October 26, 1989, presentencing report is contradicted by other records, such as the state Parole Summary, which states that Plaintiff was convicted for manslaughter as a "Juvenile Offender." (Am. Compl., Ex. C.)

In addition, Plaintiff alleges that the report falsely indicates that he "has a psychiatric history," and that he had a "history of alcohol intake since infancy." (Id. ¶ 8; id., Ex. B.) The attached report states: "The defendant denies any illicit substance abuse, admitting his alcohol intake since infancy as provided by his father. The defendant recalled general psychiatric services being provided to him while remanded at" NYSOCFS. (Am. Compl., Ex. B at 7.) The report does not mention any "psychiatric history" but states that Plaintiff "expressed a behavioral intolerance of others who disagree with or confront him." (See id.)

In 2012, a state court order required City Defendants to amend the report. (See Am. Compl. ¶ 17; id., Ex. B. (letter dated April 9, 2012).) City officials provided Plaintiff with an amended

4

presencing report on May 11, 2012. (See Am. Compl., Ex. B (letter dated May 11, 2012).) The corrected report kept the five arrests from 1979 to 1988 in the same subsection but changed its title from "Adult" to "Adult Court." (See id. (amended report).) The corrected report also clarified that, for the 1979 arrest, Plaintiff was "[a]djudicated Juvenile Offender" for the first-degree manslaughter conviction. (Id.) Finally, although the "Analysis of Offense and Legal History" section maintained that Plaintiff had "no known juvenile history," the section also stated that Plaintiff "was sentenced to two–six years['] imprisonment as a juvenile offender" for the two manslaughter counts. (Id.)

Still, some of the City Defendants—Armstrong, Bermudez, Brennan, and DiFiore—"refuse[d] to correct" the report "completely." (Id. ¶ 17.) For instance, the corrected report did not include any changes relating to Plaintiff's supposed history of alcohol consumption and behavioral issues. The four City Defendants also failed to "adequately supervis[e] their subordinate[s] after learning" of the 2012 court order, and otherwise "turned a blind eye to [their subordinates'] misconduct." (Id. ¶ 22.)

Moreover, the four "have created custom and policy" in which they have refused to provide amended presencing reports, including his partially corrected one, to the state parole department. (Id. ¶ 22.) Three other City Defendants—Kuziw, Lizzio, and Schiraldi—also "failed to file" the partially corrected report with the state parole department, preventing the parole board from having access to corrected information. (See id. ¶ 17.)

## II.    The COMPAS Report

The second document, a Correctional Offender Management Profiling for Alternative Sanctions ("COMPAS") Risk and Need Assessment (the "COMPAS report"), features a list of stock questions and prisoner-specific answers that helps the parole board make its decisions. See

5

N.Y. State Corr. & Cmty. Supervision, Directive, COMPAS Assessments/Case Plan 1 (Nov. 19, 2015), http://www.doccs.ny.gov/Directives/8500.pdf. Plaintiff contends that the COMPAS report before the parole board had false information similar to that included in the presentencing report. (See Am. Compl. ¶ 9.) With respect to the second document, Plaintiff makes claims against the six State Defendants: S. Christie, E. Collado, D. Glebocki, Goldsmith, A. Reed,[5] and T. Tracy, who all worked for the state corrections department.

Plaintiff contends that the State Defendants perpetuated two major errors in the COMPAS report. Although the State Defendants would eventually amend some of the information, they ensured that the parole board saw only the uncorrected version. (See id. ¶¶ 13, 15–17.)

To show the first error, Plaintiff provides a copy of the February 27, 2015, version of the COMPAS report. (See D.E. # 82, Ex. A.) The fifth question reads: "How many prior murder/voluntary manslaughter offense arrests as an adult?" (Id. at 1.) The listed answer: "1." (Id.) As stated above, this answer is incorrect because Plaintiff was not arrested for second-degree murder while he "was an adult." (Am. Compl. ¶ 8.)

Before June 26, 2013, when the parole board first considered whether to grant Plaintiff discretionary parole release, he had notified the State Defendants "several times" about the circumstances of his 1979 juvenile arrest. (Am. Compl. ¶ 9.) Still, because the City Defendants failed to provide the state parole department with a corrected presentencing report, and because the State Defendants believed that Plaintiff and other black prisoners were "untrustworthy," the

---

[5] In the Amended Complaint, Plaintiff named "A. Reeds" as a Defendant. (See Am. Compl.) Plaintiff has not formally filed a motion to amend the caption, but in his opposition brief to the State Defendants' joint motion to dismiss, he offered a copy of a February 27, 2015, COMPAS report listing the authoring parole staff member as "Reed, Alvin." (See D.E. # 82, Ex. A.) The Court treats the attached COMPAS report as a motion for leave to amend the caption from "A. Reeds" to "A. Reed," and the Court finds that the requirements for Federal Rule of Civil Procedure 15 are satisfied. See Fed. R. Civ. P. 15(a) (noting that leave to amend "shall be freely given when justice so requires").

State Defendants ignored him. (Id. ¶¶ 9–10, 12.) For instance, Christie in 2013 initially added the errors about Plaintiff's arrest to his COMPAS report. (Id. ¶ 9.) Two years later, on February 27, 2015, Plaintiff "informed" Reed of the erroneous information, but Reed failed to correct the report before Plaintiff's parole board hearing in June 2015. (Id. ¶ 9.) Around July 2015, after being given a copy of Plaintiff's "official Rap Sheet," Collado said he would correct the COMPAS report. (Id. ¶¶ 10–11.) But in a July 24, 2015, meeting with Plaintiff, Glebocki, and Goldsmith, Collado said he had changed his mind. (Id. ¶ 12; see also D.E. # 82 at 9.) Collado also declined to add the "official Rap Sheet" to Plaintiff's parole file. (Am. Compl. ¶ 12.) According to Plaintiff, Collado reversed his position because Goldsmith inaccurately had told him and Glebocki that "it did not matter whether" Plaintiff was sentenced as a juvenile, and because Tracy had ordered them not to amend the COMPAS report. (See D.E. # 82 at 16.) Moreover, Collado, Glebocki, and Goldsmith believed that "as [a] Black man," Plaintiff "could not be trusted," and that his evidence "could not be true or correct." (Id.)

The second error in the COMPAS report involves Plaintiff's disciplinary history. The report before the parole board erroneously stated that he had five Tier III sanctions, which are reserved for the most severe disciplinary violations in New York state prisons. (See id. ¶¶ 10, 13; see also N.Y. Comp. Codes R. & Regs. tit. 7, §§ 251-2.2(b)(3), 270.3(a)(3).) The erroneous disciplinary information elevated his risk assessment profile. (See Am. Compl. ¶ 15.)

A state judge ordered in 2013 that the Tier III sanctions be expunged from Plaintiff's record. (Id. ¶ 10.) But for two years, the State Defendants "ignored" the court order "because [of Plaintiff's] race." (Id. ¶¶ 10, 14, 16.) The disciplinary history was corrected by 2015, (see id. ¶ 13; D.E. # 82 at 9, Ex. A at 2), but Plaintiff contends that the file before the parole board included

only the uncorrected version of his COMPAS report, (see Am. Compl. ¶¶ 13, 15–17). Plaintiff names Collado as failing to update the report in the file. (See id. ¶ 16.)

Plaintiff contends that the State Defendants made these two errors because of race discrimination. (See D.E. # 65-2 at Ex. B; D.E. # 82 at 12–13.) In addition to alleging the improper training described above, Plaintiff has submitted an article recounting a review by The New York Times of "hundreds of pages of internal reports and three years of parole decisions" in the New York state prison system. (D.E. # 65-2 at Ex. B.) The review suggested that "racial bias in the state prison system is a fact of life." (Id.) The article also reported that although one in four white prisoners was released in first-time parole hearings, fewer than one in six black prisoners was. (Id.)

Based on the article, Plaintiff also alleges that State Defendants "systematic[ally] . . . discriminate[d] against one race in preparing Parole package[s] than others, and Whites are more favorably treat[ed] than any other race." (D.E. # 82 at 12.) State Defendants have "been engaged in this form of discriminatory treatment for several decades . . . ." (D.E. # 82 at 13.)

To illustrate the point, Plaintiff explains an exchange he had with Glebocki. At the July 28 meeting, Plaintiff told a parole commissioner that the file contained errors, and the commissioner requested that state officials collect additional materials from him. (See id.; see also D.E. # 82, Ex. E at 11:2–4.) The commissioner postponed decision to give state officials time to assess the collected documents. (D.E. # 82, Ex. E at 10:1–21.) Still, when Plaintiff tried to give Glebocki the records, she refused to take them because, as Plaintiff concludes, she was "trained not to believe anything" a black prisoner tells or gives her. (Am. Compl. ¶ 16.)

### III. Procedural History

Apparently fearing that the parole board would soon issue a decision based on erroneous information in his file, Plaintiff filed a lawsuit in this Court on August 18, 2015. (See D.E. # 1.) More than a month later, on September 22, 2015, the parole board issued its decision, without the benefit of a corrected presentencing or COMPAS report. (See Am. Compl. ¶¶ 5, 13, 15–17.) In its decision, the parole board stated the following:

> After carefully reviewing your record, a personal interview, and due deliberation, the panel concludes that discretionary release is not presently warranted[,] as there is a reasonable probability you would not live at liberty without again violating the law and[,] furthermore, your release would be incompatible with the welfare of society. You stand convicted of the serious offense of murder.
>
> This is your 2nd N.Y. State incarceration. Your criminal history is extensive and goes back to a YO manslaughter in 1981 and consists of attempted criminal possession of a weapon and 2 petit larcenies and a theft of services. You have done poorly in Parole in the past.
>
> The panel takes note of all statutory factors[,] including your rehabilitative efforts and programming, risk and needs assessment case plan, reentry plans, letters of support, sentencing minutes, and your improved disciplinary record. You have had 3 disciplinar[y hearings] since your last Board appearance. The panel notes that this was a marked improvement over your past disciplinary pattern and indicates that you may be on your way to being able to follow the rules of the facility & thus maybe on the way to being able to following the rules of Parole.
>
> This time, the panel has determined[,] after weighing all required factors, [that] your discretionary release is denied. The panel urges you to remain discipline free & continue to perform pristinely.

(Id., Ex. D.) According to Plaintiff, the erroneous information in his records confused the parole board. The board denied Plaintiff parole because he had been categorized as a "Youthful Offender" in light of his 1979 arrest and 1981 manslaughter conviction. (Id. ¶ 19.) But Plaintiff was never a "Youthful Offender," which New York law considers a distinct category from juvenile offenders. (Id.)

On April 26, 2016, this Court granted Plaintiff's application to proceed in forma pauperis but dismissed some of his claims without prejudice. (See generally D.E. # 12.) The Court dismissed with prejudice any damages claims against the state corrections department, the city

probation department, and the State Defendants acting in their official capacities. (Id. at 5.) The Court also dismissed without prejudice his § 1981 claims; his claims against Simmons, Bell, and Losada; and his damages claims against Armstrong, Bermudez, Brennan, and DiFiore. (Id. at 6, 11.)

On August 30, 2016, he filed an Amended Complaint, revising and adding details to his original allegations. (See generally Am. Compl.) On November 14, 2016, all of the City Defendants but Bell filed their joint motion to dismiss the Amended Complaint. (D.E. # 45.) The State Defendants filed their joint motion to dismiss on April 25, 2017, and their letter motion to quash Plaintiff's in forma pauperis status two days later. (D.E. # 77; D.E. # 86.)

## LEGAL STANDARD

Pursuant to 28 U.S.C. §§ 1915 and 1915A, the Court "shall dismiss" any complaint by a prisoner proceeding in forma pauperis "at any time" (and "as soon as practicable after docketing") if the Court finds that the complaint "fails to state a claim on which relief may be granted" or "seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. §§ 1915(e)(2), 1915A(b). The statutes confer a "continuing duty" upon the Court to dismiss sua sponte such deficient claims. See, e.g., Butler v. Shelby Cty. Gov't, No. 03-CV-2650 (TMP), 2014 WL 1331048, at *28 (W.D. Tenn. Mar. 31, 2014); Alexander v. United States, No. 13-CV-678 (JSC), 2013 WL 1789378, at *1 (N.D. Cal. Apr. 26, 2013).

Moreover, to survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, Plaintiff must allege "sufficient factual matter" to "nudge[]" Plaintiff's claims "across the line from the conceivable to plausible." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2008)). Drawing upon its "experience and common sense," the Court must determine whether liability is a "reasonable inference" from the

allegations. Id. at 678–79. The Court must dismiss the Complaint if its "well-pleaded facts do not permit the [C]ourt to infer more than the mere possibility of misconduct . . . ." Id. at 679. The Court also is "not bound to accept as true a legal conclusion couched as a factual allegation." Id. at 678. Still, the Court must adopt all factual allegations, even the "doubtful" ones. Twombly, 550 U.S. at 555.

Because Plaintiff proceeds pro se, the Court holds him to less stringent pleading standards than it would hold lawyers. See Erickson v. Pardus, 551 U.S. 89, 94 (2007). The Court interprets the pleadings as raising the strongest legal arguments they suggest. Abbas, 480 F.3d at 639. As stated above, the Court also reads the Amended Complaint as adopting any legal claims Plaintiff made in his memoranda of law opposing dismissal. See, e.g., Langert, 563 F. Supp. at 696.

## DISCUSSION

Plaintiff asserts claims under §§ 1981 and 1983 for violations of the Supremacy Clause and the Fourteenth Amendment's Due Process and Equal Protection clauses. The Court considers arguments raised in Defendants' joint motions to dismiss and by the Court sua sponte pursuant to its duty under §§ 1915 and 1915A. For the reasons stated below, the Court dismisses all of Plaintiff's claims.

### I. Immunity

The Court first determines whether the Amended Complaint seeks "monetary relief from a defendant who is immune from such relief." 28 U.S.C. §§ 1915(e)(2)(B)(iii), 1915A(b)(2). "New York probation officers[,] . . . like federal probation officers, are entitled to absolute immunity from suits for damages" when they are sued for "preparing and furnishing [presentencing] reports to the courts." Hili v. Sciarrota, 140 F.3d 210, 214 (2d Cir. 1998). In its April 26, 2016, Order, the Court dismissed the claims against Losada and Simmons on the grounds

11

of immunity, because Plaintiff's "only allegation" against them "is that their names were on the original" presentencing report, and the allegation implies only that they prepared the reports. (D.E. # 12 at 6.) The Court gave Plaintiff an opportunity to plead allegations showing that they "were otherwise involved in the alleged violations." (Id.) Reviewing the pleadings, the Court finds no other allegations made with respect to Losada and Simmons.[6] The Court therefore dismisses the damages claims against them.

## II.    Merits

In turn, the Court considers procedural and substantive arguments raised by Defendants and the Court sua sponte. The Court finds Plaintiff's remaining claims without merit.

### A.    Claims Against Bell

Plaintiff named Bell as a City Defendant in his original Complaint. (See D.E. # 1.) On August 8, 2016, the New York City Law Department, which serves as Bell's formal representative, notified Plaintiff and the Court that Bell had died. (See D.E. # 32 at 1.) Plaintiff again named Bell in the Amended Complaint filed August 30, 2016, (see Am. Compl.), but neither Plaintiff nor the Law Department has ever filed a motion to substitute Bell for a proper party. The Court therefore dismisses all of Plaintiff's claims against Bell with prejudice. See Fed. R. Civ. P. 25(a)(1) (requiring substitution motion no more than 90 days after other parties are served statement suggesting party's death); Okolie v. Paikoff, 589 F. Supp. 2d 204, 207 n.2 (E.D.N.Y. 2008) (pro se case).

---

[6] In light of other findings described below, the Court need not address the State Defendants' qualified immunity arguments. (See D.E. # 78 at 19–20.)

**B.     Section 1981 Claims**

Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State . . . to make and enforce contracts . . . and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens . . . ."  42 U.S.C. § 1981(a).  Despite the statute's broad wording, a defendant does not violate § 1981 unless it has "prevented a plaintiff from making or enforcing contracts."  Smith v. Savings Bank of Rockland Cty., No. 91-CV-3088 (JFK), 1992 WL 350743, at *7 (S.D.N.Y. Nov. 16, 1992); see Philippeaux v. N. Cent. Bronx Hosp., 871 F. Supp. 640, 654 (S.D.N.Y. 1994), aff'd, 104 F.3d 353 (2d Cir. 1996); see also Patterson v. McLean Credit Union, 491 U.S. 164, 177 (1989) (noting that § 1981 "embraces protection of a legal process, and of a right to access to legal process, that will address and resolve contract-law claims without regard to race" (emphasis added)); Miller v. Citicorp, No. 95-CV-9728 (LAP), 1997 WL 96569, at *8 (S.D.N.Y. Mar. 4, 1997) ("Section 1981 prohibits all racial discrimination in the making of private contracts . . . .").  Plaintiff has not alleged any contract or attempt to create or enforce one.  In any event, for reasons discussed infra in Section II(C)(3), Plaintiff also has failed to allege race discrimination.  Therefore, he has failed to state a § 1981 claim.

**C.     Section 1983 Claims**

Section 1983 provides a private cause of action against a "person who, under color of any statute, ordinance, regulation, custom, or usage[] of any State . . . , subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws."  42 U.S.C. § 1983.  Here, Plaintiff sufficiently alleges that Defendants acted in the course of their employment and thus "under color of state law" for purposes of § 1983.  See West v. Atkins, 487 U.S. 42, 50 (1988).  But the parties dispute

13

whether Plaintiff sufficiently pleads the other "essential" element of a § 1983 claim: that "the conduct complained of . . . deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." See Pitchell v. Callan, 13 F.3d 545, 547 (2d Cir. 1994).

In its April 26, 2016 Order, the Court held that Plaintiff may seek damages from Defendants only if he sues them in their personal capacities and for misconduct with which they were personally involved. (See D.E. # 12 at 5, 10–11 (citing Farrell v. Burke, 449 F.3d 470, 484 (2d Cir. 2006), and Gan v. City of N.Y., 996 F.2d 522, 529–30 (2d Cir. 1993)).) The Court also held that Plaintiff may seek declaratory or injunctive relief against Defendants as long as they have "a direct connection to, or responsibility for," the misconduct, regardless of whether they were personally involved. (See id. at 6 (quoting Davidson v. Scully, 148 F. Supp. 2d 249, 254 (S.D.N.Y. 2001)).) Before the Court proceeds with analyzing the substance of Plaintiff's constitutional claims, it will address sua sponte a procedural issue—namely, whether he may file a constitutional claim under the Supremacy Clause. And in light of other findings described below, the Court declines to address the State Defendants' arguments under Heck v. Humphrey, 512 U.S. 477 (1994); the doctrines of abandonment, collateral estoppel, and res judicata; and case law requiring personal involvement or a direct connection to the misconduct at issue. (See generally D.E. # 83.)

### 1.    Private Right of Action Under the Supremacy Clause

Plaintiff appears to allege that Defendants violated the Supremacy Clause by "misappl[ying] . . . State law" with respect to reporting his 1979 arrest and 1981 manslaughter conviction. (D.E. # 65 at 3; D.E. # 82 at 10.) The misapplication, Plaintiff alleges, is that he was deemed "criminal[ly] responsible as an adult" at the age of 15. (D.E. # 65 at 3.) Plaintiff cites to Eighth Amendment and Fourteenth Amendment cases, suggesting that Defendants' application of state law conflicts with federal constitutional law. (See D.E. # 65 at 3–4; D.E. # 82 at 10.) But

14

the Supremacy Clause does not create a "private cause of action" to settle conflicts between federal and state law. Davis v. Shah, 821 F.3d 231, 245 (2d Cir. 2016) (citing Armstrong v. Exceptional Child Ctr., Inc., 135 S. Ct. 1378, 1383 (2015)). Rather, the Supremacy Clause creates only "'a rule of decision' by which courts are to resolve conflicts between state and federal laws" and leaves the substantive federal law to confer a private right of action. See id. (quoting Armstrong, 135 S. Ct. at 1383); see also Armstrong, 135 S. Ct. at 1383 (noting that the Supremacy Clause is not a "source of any federal rights" and "is silent regarding who may enforce federal laws in court, and in what circumstances they may do so").[7]

## 2. Claims Arising from 2013 Parole Board Meeting

The Court next turns to the merits, addressing first the State Defendants' arguments with respect to the June 26, 2013, parole board meeting. At one point, Plaintiff alleges that Christie "use[d] the wrong information and ignore[d]" Plaintiff with respect to the 2013 meeting. (Am. Compl. ¶ 9.) The State Defendants argue that such a bare allegation fails to state any claim with respect to the parole decisions arising from that meeting. (D.E. # 78 at 12.) After reviewing the pleadings and Plaintiff's opposition briefs, the Court does not find any other allegations relating to the 2013 meeting and therefore does not find plausible any claim relating to it. In light of Plaintiff's in forma pauperis status, the Court dismisses any such claims against all Defendants.[8]

---

[7] The due process case Plaintiff cites relates to the right to confidentiality. (See D.E. # 65 at 3–4.) The Court discusses the right below. See infra Section II(C)(4)(c). With respect to the Eighth Amendment, Plaintiff does not expressly invoke the clause in his Amended Complaint or opposition briefing, and his cited cases deal not with a private right of action against executive officials, but rather with the constitutionality of sentencing statutes. (See D.E. # 82 at 10.) In any event, Plaintiff does not aver how Defendants' conduct, which relates to discretionary parole, prolonged "detention beyond that authorized by law," Sudler v. City of N.Y., 689 F.3d 159, 169 n.11 (2d Cir. 2012), or otherwise "inflicted 'cruel and unusual punishment' upon him," Turner v. Smith, 443 F. Supp. 2d 288, 294 (E.D.N.Y. 2005) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)), and therefore fails to state an Eighth Amendment claim.

[8] For similar reasons, to the extent that Plaintiff is also asserting claims for conduct performed by Defendants in 1989 or 1994, (see D.E. # 82 at 14), the Court dismisses those claims.

See also Butler, 2014 WL 1331048, at *28 (noting the Court's "continuing duty" to dismiss Plaintiff's claims sua sponte). The remaining claims deal with the parole denial arising from the 2015 meetings with the parole board. The Court addresses them in turn.

### 3.    Equal Protection Claims

With respect to the equal protection claims, Plaintiff must show that "he was treated differently than others similarly situated as a result of intentional or purposeful discrimination." Phillips v. Girdich, 408 F.3d 124, 129 (2d Cir. 2005). The selective treatment may be "based on impermissible considerations such as race, . . . malicious or bad faith intent to injure a person," or it may result from "no rational basis for the difference in treatment." Bizzaroo v. Miranda, 394 F.3d 82, 86, 88 (2d Cir. 2005) (alteration omitted) (quoting LeClair v. Saunders, 627 F.2d 606, 609–10 (2d Cir. 1980)).

Upon review of the pleadings and Plaintiff's opposition briefs, the Court finds that Plaintiff alleges only race discrimination. The current pleadings are devoid of any allegations suggesting bad faith on the part of Defendants or differential treatment based on considerations other than race. The Court dismisses Plaintiff's irrational or bad-faith discrimination claims.

With respect to race discrimination, Plaintiff fails to state a claim because he does not sufficiently plead discriminatory purpose. A government actor has such intent only if she "selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." Hayden v. Paterson, 594 F.3d 150, 163 (2d Cir. 2010) (quoting Pers. Adm'r of Mass. v. Feeney, 442 U.S. 256, 279 (1979)); (see also D.E. # 46 at 16–17; D.E. # 78 at 16–17). With respect to the State Defendants and City Defendants, the pleadings state that they were "trained" to view black prisoners like him as "untrustworthy." (Am. Compl. ¶ 9.) Without any factual support for this implausible claim, the Court declines to consider it a

16

"fact" whose truth this Court must assume. Plaintiff also alleges that the State Defendants "systematic[ally]" discriminated against black prisoners and that they have been doing so for decades. (D.E. # 82 at 12–13.) He attempts to support this claim by submitting the article on racial disparities in the prison system in New York. (D.E. # 65-2 at Ex. B.) Most of the article does not relate to parole at all, and the article's assertion that "racial bias in the state prison system is a fact of life" is not a fact the Court is bound to honor as true. Moreover, the reported statistical disparity between first-time parole release rates for white and black prisoners does not strike the Court as significant or meaningful enough to establish a "clear pattern" of misconduct, "unexplainable on grounds other than race." See Hayden, 594 F.3d at 163 (quoting Vill. of Arlington Heights v. Metro. Hous. Dev. Corp., 429 U.S. 252, 266 (1977)). More to the point, the general claims of disparity do not plausibly show that any of the State Defendants named in this suit held discriminatory intent in their actions against Plaintiff. Cf. Reynolds v. Barrett, 685 F.3d 193, 204 (2d Cir. 2012) ("Statistical disparities may be, and often are, attributable to a subset of actors— not to every actor who had an opportunity to discriminate."). Accordingly, the pleadings do not plausibly show that the City Defendants and State Defendants intended to discriminated against Plaintiff because of his race. The Court dismisses Plaintiff's race-discrimination claims.

### 4. Due Process Claims

In amending his original Complaint, Plaintiff has expanded the number of theories under which he claims a due process violation. Plaintiff has alleged a violation to his due process rights to (1) parole denials based on non-arbitrary and otherwise permissible reasons; (2) accurate information in the prisoner file used by the parole board;[9] (3) confidentiality; and (4) family and

---

[9] In its April 26, 2016, Order, the Court noted that district courts have recognized the first two rights. (D.E. # 12 at 10.) The Court construed the Complaint as asserting a violation of only the right not to be denied parole arbitrarily or

intimate relationships. Finally, Plaintiff alleges (5) government defamation. The City Defendants make arguments against all but the fourth claim, (see generally D.E. # 46; D.E. # 73), while the State Defendants make arguments against only the first three claims, (see generally D.E. # 78; D.E. # 83). But because the Court has as a "continuing duty" to assess Plaintiff's complaint sua sponte, see, e.g., Butler, 2014 WL 1331048, at *28, the Court carefully considers each claim in turn and dismisses all of them.

### a. Right to Non-Arbitrary and Otherwise Permissible Parole Denials

The parole system in New York does not create a liberty interest in parole. See Barna v. Travis, 239 F.3d 169, 171 (2d Cir. 2001). But courts in this Circuit have recognized "a limited liberty interest in 'not being denied parole for arbitrary or impermissible reasons.'" (D.E. # 12 at 10 (citing Boddie v. N.Y. State Div. of Parole, 285 F. Supp. 2d 421, 428 (S.D.N.Y. 2003), and Mathie v. Dennison, No. 06-CV-3184 (GEL), 2007 WL 2351072, at *6 (S.D.N.Y. Aug. 16, 2007)).)

The New York Executive Law provides standards by which the parole board may afford relief to prisoners. The parole board may grant "[d]iscretionary release on parole" if the board finds a "reasonable probability" that the prisoner, if released, "will live and remain at liberty without violating the law," and that "his release is not incompatible with the welfare of society and will not so deprecate the seriousness of his crime as to undermine respect for law." N.Y. Exec. Law. § 259-i(2)(c)(A). The statute provides that the board "shall" consider "the institutional record," the prisoner's participation in a temporary release program, "release plans," any deportation consequences, victims' statements, the length of sentence, sentencing records, "the

---

impermissibly. (Id.) But in light of the additional allegations in the Amended Complaint and Plaintiff's opposition briefs, the Court considers both rights for purposes of the instant motions.

seriousness of the offense," and prior criminal record. See id. Still, "while the relevant statutory factors must be considered, it is well settled that the weight to be accorded to each of the factors lies solely within the discretion" of the board, and it "is not required to expressly discuss each of the guidelines in its determination." Garcia v. N.Y. State Div. of Parole, 657 N.Y.S.2d 415, 418 (1st Dep't 1997); see also, e.g., Davis v. Thomas, 256 F. Supp. 2d 190, 192 (S.D.N.Y. 2003).

Accordingly, "[d]enial of parole is neither arbitrary nor capricious when the Parole Board relies on the factors defined by New York statute." Romer v. Travis, No. 03-CV-1670 (KMW), 2003 WL 21744079, at *6 (S.D.N.Y. July 29, 2003) (citing Davis, 256 F. Supp. 2d at 191). As long as the decision evinces a "balancing of the statutory criteria," the Court may not find it unreasonable, even if the parole board makes an incorrect finding based on a "minor" error in the prison file. Boddie, 285 F. Supp. 2d at 429.

Pursuant to the New York Executive Law, the parole board found a "reasonable probability" that Plaintiff would violate the law again if released, and that his release would be "incompatible with the welfare of society." (Am. Compl., Ex. D.) The board placed heavy emphasis on three statutory factors: "the institutional record," "the seriousness of the offense," and prior criminal history. (See id.); see also N.Y. Exec. Law. § 259-i(2)(c)(A). Placing substantial weight on such factors is neither arbitrarily nor impermissible. Cf. Graziano v. Pataki, 689 F.3d 110, 115 (2d Cir. 2012) ("[T]he Board . . . is entitled to give whatever weight it deems appropriate to each of [the] statutory factors."). The parole board based its decision on numerous issues that Plaintiff does not challenge. Although Plaintiff had a recent "marked improvement" in his disciplinary history, he nonetheless had three disciplinary hearings since his prior parole board meeting, and he has "done poorly in Parole in the past." (Am. Compl., Ex. D.) The board emphasized that Plaintiff was convicted of the "serious offense of murder" and other crimes, and

that Plaintiff had been incarcerated in New York state prison before. (Id.) Finally, the parole board noted consideration of numerous other statutory factors, including "rehabilitative efforts and programming," his reentry strategy, letters of support, and sentencing minutes. The judgment therefore indicates a "balancing of the statutory criteria." Boddie, 285 F. Supp. 2d at 429.

Moreover, Plaintiff fails to persuade the Court that it should second-guess the balancing. See id. Read charitably, the Amended Complaint alleges that the parole board made an erroneous finding. The board explicitly stated that it relied on the COMPAS report, which Plaintiff contends is an erroneous copy. The board also believed that Plaintiff was a "YO," ostensibly referring to a Youthful Offender, for purposes of his manslaughter offense. (See Am. Compl., Ex. D.) The Amended Complaint suggests that the board relied on the erroneous information to find that Plaintiff received a manslaughter "youth offender adjudication," which is not considered a conviction under New York law.[10] (See id.); N.Y. Crim. Proc. Law. § 720.35(1) ("A youthful offender adjudication is not a judgment of conviction for a crime or any other offense . . . ."). This finding is erroneous because, as Plaintiff claims, he was not a Youthful Offender and was convicted of manslaughter. (See, e.g., Am. Compl. ¶ 19; D.E. # 82 at 15 ("There is no Youthful Offender sentence imposed upon the plaintiff.").) Insofar as the parole board's determination "was based on erroneous information," the parole board may need to rehear Plaintiff's case as a matter of state law. See Plevy v. Travis, 793 N.Y.S.2d 262, 880 (3d Dep't 2005); (see also D.E. # 82-2, Ex. E at 10:12–15). But see Bramble v. N.Y.S. Bd. Of Parole, 761 N.Y.S.2d 544, 544 (3d Dep't

---

[10] The State Defendants ask the Court to characterize the "YO" designation as a mistake, but they rely on evidence not contained within the four corners of the Amended Complaint and Plaintiff's opposition briefs, or within matters from which the court may take judicial notice. (See D.E. # 78 at 14.) The Court may not consider such evidence. See N.Y. Pet Welfare Ass'n, 850 F.3d at 86.

2003) (noting that parole denials will not be reversed unless the judgments exhibit "irrationality bordering on impropriety").

Still, state law violations generally are "matters for consideration by the state courts" and do not become constitutional issues. Germenis v. N.Y.S. Dep't of Corr. Servs., No. 08-CV-8968 (GEL), 2009 WL 2877646, at *3 (S.D.N.Y. Sept. 9, 2009). As stated above, parole is neither arbitrarily nor impermissibly denied when the decision included incorrect state parole board findings based on "minor" errors in the parole file. See Boddie, 285 F. Supp. 2d at 429.

Plaintiff here fails to show that his parole board decision incorporated anything more than minor errors. For instance, the decision relies on the apparently erroneous assumption that Plaintiff was adjudicated as a youthful offender—as opposed to convicted as a juvenile offender—and found liable for manslaughter in 1981. But the purported error relates to the characterization of his offense, not to the underlying conduct. And New York law reasonably makes Plaintiff's prior conduct relevant to the parole determination. See N.Y. Exec. Law. § 259-i(2)(c)(A). Plaintiff does not contest that he committed the conduct; in fact, he claims that he was arrested for murder and convicted of manslaughter. (See, e.g., Am. Compl. ¶¶ 7–8.) In light of the numerous other factors considered by the parole board, Plaintiff has failed to plausibly show that the board's erroneous finding about how the New York courts treated his 1979 murder charge is anything more than "harmless." (See D.E. # 46 at 14); see also Boddie, 285 F. Supp. 2d at 429.

In any event, the supposed error cast Plaintiff in a more favorable light. On this point, the Court finds instructive a leading New York treatise's explanation of the difference between "youthful offender" and "juvenile offender." The treatise states:

> As a general rule, a person must be at least 16 years old to be criminally responsible for his or her conduct.... [A] person who is less than 16 years of age and criminally responsible for his or her conduct is known as a 'juvenile offender.' The term 'juvenile offender' is to be distinguished . . . from the term 'youthful offender,' which applies to an eligible youth (including a 'juvenile offender') who is subject to proceedings in a criminal court and was less than 19 years of age at the time of the commission of the crime.... Special indeterminate sentences of imprisonment are mandated or a person convicted and sentenced as a juvenile offender. A 'juvenile offender,' however, is eligible to be adjudicated a 'youthful offender.' Upon such determination, the authorized sentence for a youthful offender, including a sentence which does not include[] imprisonment, is available.

William C. Donnino, Practice Commentary, N.Y. Penal Law § 30.00 (McKinney 2017) (internal citations omitted); see also, e.g., N.Y. Penal Law § 60.10 (1981) ("When a juvenile offender is convicted of a crime, the court shall sentence the defendant to imprisonment in accordance with section 70.05 or sentence him upon a youthful offender finding in accordance with section 60.02 of this chapter."). Another leading treatise explains that, for a juvenile offender, the court may "substitut[e]" a "youthful offender adjudication for a criminal judgment of conviction," offering opportunities to "avoid the stigmatization of a criminal conviction" and, in some cases, to "avoid[] mandatory incarceration or at least limit[] the period of such incarceration." Spiros A. Tsimbinos, Expert Analyses, N.Y. Crim. Proc. Law art. 720 (LexisNexis 2017). At the time of Plaintiff's 1981 conviction, the maximum sentence given to a youthful offender was four years' imprisonment. See John P. Woods, New York's Juvenile Offender Law: An Overview and Analysis, 9 Fordham Urb. L.J. 1, 34 (1980) (citing N.Y. Penal Law §§ 60.02, 70.00(2)(e) (McKinney 1979)). Plaintiff's sentence allegedly was two to six years' imprisonment. (See Am. Compl., Ex. A.) Accordingly, under Plaintiff's theory, the alleged error made his record appear less contemptible and, if anything, would make the parole board more likely to award, rather than

deny, parole. Accordingly, the allegation fails reasonably to imply that the board <u>denied</u> parole in light of the youthful-offender error.

And with respect to the alleged misinformation about Plaintiff's mental health in the presentencing report, the decision did not state that the board relied on the report. (<u>See</u> Am. Compl., Ex. D.) Of course, New York law requires that the board consider the presentencing report, <u>see</u> <u>Silmon v. Travis</u>, 741 N.E.2d 501, 505 (N.Y. 2000), even if the board does not explicitly say so, <u>see</u> N.Y. Exec. Law. § 259-i(2)(c)(A); <u>Garcia</u>, 657 N.Y.S.2d at 418. But because Plaintiff's decision listed and discussed numerous other facts and statutory factors, the Court finds it implausible that the presentencing report's mental health history section had more than a minor effect on the judgment. Because Plaintiff's pleadings offer nothing more, Plaintiff has failed to show that the mental health information produced anything more than harmless error.

Finally, Plaintiff failed to prove that the erroneous Tier III reporting was more than minor error. Despite the severity of the disciplinary sanctions, the pleadings do not indicate that the Tier III information tainted the board's view of Plaintiff's disciplinary history. The decision does not portray Plaintiff's disciplinary history as negative. In fact, the board noted that Plaintiff had an "improved disciplinary record" and "may be on [his] way" to being a viable parole candidate in the future. (Am. Compl., Ex. D.) However, outweighing the positive developments in his disciplinary history were numerous other factors, such as the "serious offense of murder" for which Plaintiff is imprisoned and his poor parole history. (<u>See</u> <u>id.</u>) Upon reviewing the decision, the Court finds that Plaintiff fails to show how the Tier III reporting was more than harmless error.

Accordingly, the Court finds that Plaintiff failed to show that the parole decision was made arbitrarily or impermissibly. (<u>See</u> D.E. # 12 at 10.) Therefore, Plaintiff failed to show that his due process right was burdened at all, let alone by Defendants' conduct. <u>See</u> <u>Pitchell</u>, 13 F.3d at 547

23

(noting that a § 1983 claim must allege that plaintiff was "deprived" of a legal right). Accordingly, the Court dismisses the due process claims premised on the right to non-arbitrary and otherwise permissible parole denials.

### b.  Right to Accurate Information Before the Parole Board

Similar to, but distinct from, the right not to be denied parole arbitrarily or impermissibly is the so-called right "to have accurate information in his prison file when such information is relied on in a parole hearing." See Lowrance v. Coughlin, 862 F. Supp. 1090, 1099 (S.D.N.Y. 1994); Farinaro v. Coughlin, 642 F. Supp. 276, 281–82 (S.D.N.Y. 1986). The Second Circuit has reserved judgment on whether the right exists. LaBounty v. Coombe ("LaBounty II"), No. 99-2318, 2000 WL 287726, at *1 (2d Cir. 2000). But some district courts have answered yes, see, e.g., Lowrance, 862 F. Supp. at 1099, and for purposes of this motion, the Court assumes such a claim exists.

The Court starts with the uncontroversial premise that the "mere existence of an inaccuracy" in a parole file "is not sufficient for [Plaintiff] to state a claim of a constitutional injury." Pruett v. Levi, 622 F.2d 256, 258 (6th Cir. 1980) (per curiam) (citing Paul v. Davis, 424 U.S. 693, 712–14 (1976)); cf. Hili, 140 F.3d at 216 ("Though verification of the information collected is desirable, verification simply is not always possible."). To assert a constitutional claim, Plaintiff must show not only that false information existed in the prison file, but also that "the information is likely to be relied on in" the parole decision. Lowrance, 862 F. Supp. at 1099; (see also D.E. # 12 at 10). The board must rely on the information to a degree that "jeopardize[s] fundamental fairness for denial of parole," United States ex rel. Silverman v. Pennsylvania, 527 F. Supp. 742, 745 (W.D. Pa. 1981), aff'd, 707 F.2d 1397 (3d Cir. 1983). Moreover, the information must be "about the inmate's prior criminal record or disciplinary offenses," and the prisoner must

24

allege that he had requested expungement of the information and that the prison officials had refused. Farinaro, 642 F. Supp. at 282. Finally, Plaintiff must base the claim on documents Defendants "generated, and may not base his claim on documents simply received and recorded by [D]efendants." LaBounty v. Coombe ("LaBounty I"), No. 95-CV-5592 (MBM), 1999 WL 177438, at *3 (S.D.N.Y. Mar. 30, 1999), aff'd, No. 99-2318, 2000 WL 287726 (2d Cir. 2000).

At the onset, the Court finds that Plaintiff cannot file a claim based on the mental health information in the presentencing report, because it does not relate to "the inmate's prior criminal record or disciplinary offenses." Farinaro, 64 F. Supp. at 282. Moreover, Plaintiff cannot sue the State Defendants based on information concerning the 1979 murder arrest and 1981 manslaughter conviction. Plaintiff concedes that State Defendants drew their allegedly erroneous information from the city presentencing report. (See, e.g., Am. Compl. ¶ 9.) The State Defendants had "every right to rely on" the city's version of the presentencing report to create their COMPAS report and had "no authority to remove from" the parole file the presentencing report without notice from the city that the report was in error. LaBounty I, 1999 WL 177438, at *4. Therefore, the State Defendants' "refusal to expunge" the erroneous city information from the COMPAS report or parole file "has not caused [P]laintiff a 'constitutional injury.'" Id. (quoting Pruett, 622 F.2d at 258). Finally, with respect to the false disciplinary history in the COMPAS report and criminal history in the presentencing report, Plaintiff fails to show that the board relied on the information to a level that "jeopardize[s] fundamental fairness . . . ." Pennsylvania, 527 F. Supp. at 745. As stated above, the false information in the context of the parole board's well-reasoned opinion is nothing more than a minor error. Accordingly, reliance on such minor errors cannot rise to the level of constitutional injury. See id. Therefore, assuming that Plaintiff has a due process right to

accurate information in his parole file, the Court finds that he failed to show that Defendants violated such a right.[11]

### c.    Right to Confidentiality

There is a "recognized right to privacy in personal information," and it is characterized as "a right to 'confidentiality.'" Doe v. City of N.Y., 15 F.3d 264, 267 (2d Cir. 1994). The Second Circuit has grounded this right in due process. See O'Connor v. Pierson, 426 F.3d 187, 201 (2d Cir. 2005). To establish such a violation, Plaintiff must first "show that she had . . . a 'reasonable expectation of privacy' . . . in the information that was disclosed." Rutherford v. Katonah-Lewisboro Sch. Dist., 670 F. Supp. 2d 230, 239 (S.D.N.Y. 2009) (citations omitted). And when Plaintiff alleges that an executive action infringed upon the protected privacy right, Plaintiff "must show not just that the action was literally arbitrary, but that it 'shocks the conscience.'" Id. (citation omitted).

Previously, the Court held that Plaintiff may assert a claim based on his "interest in non-disclosure of youthful offender information . . . predicated upon statutorily conferred expectations of privacy." (D.E. # 12 at 9 (quoting Soucie v. Cty. of Monroe, 736 F. Supp. 33, 37 (W.D.N.Y. 1990)).) However, Plaintiff now has abandoned any claim based on youthful offender records, stating that "[t]here is no Youthful Offender sentence imposed upon the plaintiff," and that the youthful offender provisions are "inapplicable to the plaintiff." (D.E. # 82 at 15.) Plaintiff instead points to, among other things, § 501-c of the New York Executive Law, which provides that the "[r]ecords of files of youths kept" by the NYSOCFS generally "shall be deemed confidential . . . ."

---

[11] Plaintiff appears to complain that the City Defendants and State Defendants allegedly ignored, or refused completely to abide by, state court orders requiring corrections in his parole file. (See Am. Compl. ¶¶ 10, 13–17, 22; D.E. # 82 at 9, Ex. A at 2.) Assuming the well-pleaded allegations as true, the Court understands Plaintiff's consternation. However, the proper remedy is not federal relief in a civil rights action, but rather a sanctions or contempt order in state court.

N.Y. Exec. Law § 501-c(1)(a); (see also D.E. # 65-2 at Ex. A; D.E. # 82 at Ex. F). Still, the Court need not determine whether the statute confers any reasonable expectation of privacy, because Plaintiff fails to show that Defendants' disclosure of the criminal, disciplinary, and mental health history to the parole board "shocks the conscience," see Rutherford, 670 F. Supp. 2d at 239. As required by statute, the board relies on such information in the mine run of their decisions. See N.Y. Exec. Law. § 259-i(2)(c)(A). Such information necessarily is disclosed to and discussed by the board. Accordingly, it would take extraordinary allegations for the Court to find plausible that the disclosure of such commonplace parole information is so "outrageously arbitrary" as to shock the conscience. See Rutherford, 670 F. Supp. 2d at 236. Plaintiff has failed to do so here.

### d.    Right to Family and Intimate Relationships

Under the Due Process Clause, the "freedom of intimate association" is considered a "fundamental element of personal liberty." Patel v. Searles, 303 F.3d 130, 135 (2d Cir. 2002) (quoting Roberts v. U.S. Jaycees, 468 U.S. 609, 618 (1984)). Accordingly, the Constitution affords "highly personal relationships a substantial measure of sanctuary from unjustified interference by the State." Id. (quoting Roberts, 468 U.S. at 618–19). Still, "most circuit courts and district courts within the Second Circuit have found that intent to interfere is a necessary element in an intimate association claim." Sharpe v. City of N.Y., 560 F. App'x 78, 79 (2d Cir. 2014). The Court must dismiss Plaintiff's claim relating to intimate association, because he has asserted neither associations with people nor improper intent by Defendants. Plaintiff has not even suggested that Defendants are "displeas[ed]" with his associates or their conduct. See Adler v. Pataki, 185 F.3d 35, 44 (2d Cir. 1999); see also Sharpe, 560 F. App'x at 79 (suggesting, in dicta, that Adler may not have required proof of intent). The most Plaintiff has alleged is that some unknown persons have submitted "letters of support" that the parole board has read. (See Am. Compl., Ex. D.)

27

Because the Amended Complaint and opposition briefs lack other relevant allegations, Plaintiff fails to state intimate association claims.

### e.  Government Defamation

In his opposition brief against State Defendants, Plaintiff clarifies that he pursues what is called a "stigma plus" claim under the Due Process Clause, with respect to the purportedly false information concerning his 1979 arrest and 1981 conviction. (See D.E. # 82 at 10–11.) Plaintiff fails to state such a claim.

Defamation generally is not actionable under § 1983; "even palpably false statements by a governmental actor are not cognizable if the only injury is to the plaintiff's reputation," O'Neal v. Spota, No. 16-CV-579 (JFB), 2017 WL 118044, at *3 (E.D.N.Y. Jan 12, 2017). Government defamation becomes actionable under the Due Process Clause only if Plaintiff alleges the "stigma plus" claim. See id. Specifically, Plaintiff must contend that (1) Defendants uttered a false statement that is "sufficiently derogatory to injure [Plaintiff's] reputation" and "capable of being proved false"; and that (2) Defendants through their statement have "imposed" a "material . . . burden" on Plaintiff or an "alteration of [Plaintiff]'s status or rights." Sadallah v. City of Utica, 383 F.3d 34, 38 (2d Cir. 2004). Here, Defendants allegedly disseminated the false information to the parole board, but Plaintiff does not allege any burden or alteration that Defendants "imposed" on Plaintiff by disclosing the information, see id. The mere act of disseminating information does not change Plaintiff's current state of incarceration or his entitlement to a parole hearing or parole relief in general.[12] The only action alleged in the pleadings that arguably created a burden is the parole denial, which was issued by the parole board, not

---

[12] And to the extent Plaintiff asserts a burden on the due process rights already rejected by this court, see supra Sections II(C)(4)(a)–(d), the Court dismisses the "stigma plus" claim as derivative. See, e.g., United States v. Cossette, 593 F. App'x 28, 31 (2d Cir. 2014); Monsky v. Moraghan, 127 F.3d 243, 247 (2d Cir. 1997).

Defendants. And a parole denial effects no burden on Plaintiff, because parole is discretionary in New York and he has no constitutionally recognized interest in release, see Barna, 239 F.3d at 171. Accordingly, Plaintiff has failed to state a "stigma plus" claim.

* * *

Plaintiff fails to plead sufficient facts plausibly showing a due process violation under any of the five theories he has proposed. Accordingly, the Court dismisses the due process claims.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' joint motions to dismiss. In summary, the Court dismisses with prejudice Plaintiff's Supremacy Clause claims and claims against Bell. The Court dismisses without prejudice all other claims. Because the suit is dismissed, the Court DENIES as MOOT the State Defendants' motion to revoke Plaintiff's in forma pauperis status. The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal would not be taken in good faith, and the Court DENIES Plaintiff leave to appeal in forma pauperis. See Coppedge v. United States, 369 U.S. 438, 444–45 (1962).

Accordingly, the Clerk of Court is directed to close this case.

SO ORDERED.

Dated: September 2½ 2017
      Brooklyn, New York

/s/ Carol Bagley Amon

Carol Bagley Amon
United States District Judge

29